Smith, J.
This cause was heard upon an agreed statement of facts, the material points of which are these :
Charles Neave, now deceased, at the time of his death was the owner in fee-simple of a part of the lot at the northwest corner of Fourth and Race streets, and on February 11, 1890, his five children were the owners thereof in .fee-simple; and on March 1, 1890, A. C. and Halstead Neave, as trustees under the last will of said Charles Neave, deceased, were the owners in fee-simple of a part of a lot fronting on the north side of Fourth street, immediately west of, and adjoining the other lot mentioned. Both of said tracts until early in the year 1890 stood on the duplicate for taxation in the name of “ Charles Neave’s estate.”
On August 30, 1889, the Board of Equalization of the City of Cincinnati, to offset reductions theretofore made by it, added $15,000 to the valuation of the first lot, and $9,000 to the valuation of the second lot “ on account of inequality in valuation,” and thereupon the auditor of said county added these sums to the valuation of these two lots, that is, on the duplicate' of 1889.
On December 20, 1889, the said board of equalization, sitting as a board of revision, deducted $11,000 from the valua- . tion of the first lot, and $9,000 from the valuation of the second lot, on account of excessive valuation, and the auditor of the county deducted the same from the valuation thereof on said duplicate of 1889. As agreed by the parties, “ The said deductions so made reduced the value of the real property in said city below its aggregate value on the duplicate of the preceding year, with the value of all new entries and new structures, over the value of those destroyed, as returned by the several assessors.”
In January, 1890, the plaintiff company was incorporated, and has ever since been á corporation under the laws of the state. *153 The certificate of incorporation was signed by J. S. Neave and H. Jenney who were in no way interested in said real estate, and by Alice, Alexander and Halstead Neave, who were part owners thereof.
On February 11,1890,the said six children of Charles Neave, the owners of the first described lot, conveyed the same in fee-simple, with covenants of general warranty, except as to an annuity thereon, and certain assessments, to the plaintiff company, which has ever since been the owner and in possession thereof, and on March 1, 1890, said Alexander and Halsteád Neave, as trustees, and duly authorized to do so, leased the other lot to the plaintiff company for the term of ninety-nine years, renewable forever, at a stipulated rent, the plaintiff company to pay all taxes and assessments of every kind that might be levied thereon during the term; and the plaintiff company has been in possession thereof ever since. Both of said tracts on March 3,1890, were transferred upon the tax duplicate by the county auditor into the name of the plaintiff company, and at that time, the valuation of said lots upon the tax duplicate was the amount at which it stood on the duplicate of 1889 after the auditor had deducted from the valuation the •sums of $11,000 and $9,000 as before stated. On the 3rd of March, 1890, said deed and lease were duly recorded by the recorder of Hamilton county. Said deed and lease were executed, delivered and received in good faith, and said real estate was necessary for the purposes of the corporation, and it was duly authorized by law to acquire the same,
The six grantors in said deed owned and held shares in the capital stock of said corporation, some in proportion and some in excess of their respective interests in the lot at the time of the conveyance. Said trustees, as such, did not at any time hold or own any shares of said stock. Persons other than those named, who never had any interest in any of said land, held and owned shares of said stock from the organization of the corporation up to this time. '
Said real estate is situate in the Eighth Ward of Cincin *154 nati. The making of the decennial appraisement of 1890 of the lands of said city was continued into the year 1891. The agreed statement shows, by the record of the Board of Review of the City of Cincinnati, sitting as the decennial board of equalization, that the decennial appraisement of 1890, of lands for taxation in the Eighth Ward of said city, was completed October 31, 1891, as shown by the certificate thereon, and the same turned over to the auditor who receipted therefor ; and thereafter said board took no farther action in regard to said real estate or any other real estate in the city.
It is further agreed that on October 19, 1891, the state, on the relation of Simon Krug, brought an action in mandamus against the auditor of said county to require him to replace upon the duplicate a valuation of $153,260 which, as was claimed, had been illegally taken therefrom. On November 11, 1891, a judgment was entered by the court commanding him to do so as far back as 1889, unless said property had changed ownership as provided by statute. No other person was made defendant to said action, and neither the grantors or.lessors, or the plaintiff company, had any notice ot such proceedings.
When plaintiff acquired this property, it was aware of such reductions by the auditor in 1889, and they were then in full force and effect, and plaintiff purchased and leased the same believing that such reductions had been properly and legally made.
In the first part of December, 1891, the auditor, claiming to act in pursuance of said judgment, placed upon the tax duplicate of the couuty against the first described lot, an additional value of $11,000, and against the second tract an additional value of $9,0001for the years 1889 and 1890, and charged against the lands the taxes on said sums for said years, and certified the same to the treasurer of the county for collection, who demands payment thereof. All of the other taxes on said lands for 1889 and 1890 have been paid, but the sum $1,069.20, the taxes for said years on said additions, have not
*155 been paid. Until this demand was made in December, 1891, no demand had been made therefor, and the plaintiff or its grantors had no knowledge of any such claim.
On this state of facts the question is whether the auditor of Hamilton county had the right in the first part of Decem1891, to place upon the tax duplicate of the county for 1891 against the lot first described the amount of taxes that would have been chargeable on the $11,000 for the years 1889 and 1890, if it had appeared upon the duplicate for those years, and on the lot secondly described the amount of taxes that would have been chargeable on the $9,000 for the years 1889 and 1890. If under the laws of the state he was authorized to do so, the petition of the plaintiff should be dismissed.
It must be conceded that such action on the part of the auditor, to be legal and valid, must be expressly authorized by an act of the legislature of the state, and it is the claim of the counsel for defendant that this has been done; and this is denied by the counsel for the plaintiff. The sections of the statutes which are said to bear upon this question, are 1036, 1038, 1039, 1040, 2800 and 2803, copies of which are here set out:
“Section 1036. (As to the tax to be levied on each tract, etc.):
' “ The auditor, after receiving from the auditor of state, and from such other officers and authorities as are legally empowered to determine the rates or amounts of taxes to be levied for the various purposes authorized by law, statements of the rates and sums to be levied for the current year, shall forthwith proceed to determine the sums to be levied upon each tract and lot of real property, adding the taxes of any previous year that have been omitted, and upon the amount of personal property, moneys, and credits, listed in his county in the name of each person, company, or corporation, which shall be assessed equally on all real and personal property subject to such taxes, and set down in one or more columns, in such manner and form as the auditor of state prescribes; and in all cases where the whole amount of taxes upon the personal property, moneys, and credits of any person does not amount to ten *156 cents, the auditoi’ shall not enter the same upon the tax list, if such person has no other taxable property.”
The Heave Building Company v. R. B. Brooks, Treas.
“ Section 1038. . (Correction of errors on tax-list and duplicate) :
“ The auditor shall, from time to time, correct all errors which he discovers in the tax-list and duplicate, either in the name of the person charged with taxes or assessments, the description of lands or other property, or when property exempt from taxation has been charged with tax, or in the amount of such taxes or assessments; but if the correction is made after the duplicate is delivered to the treasurer, it shall be made on the margin of said list and duplicate, without changing any name, description, or figure in the duplicate as delivered, or in the original tax-list, which shall always correspond exactly with each other; and when the auditor is satisfied, after having delivered the duplicate to the county treasurer for collection, that any tax or assessment thereon, or any part thereof, has been erroneously charged, he may give the person charged therewith a certificate to that effect, to be presented to said treasurer, who shall deduct the amount from said tax or assessment; and if at any time the auditor discovers that any erroneous taxes or assessments have been charged and collected in previous years, he shall call the attention ot the county commissioners thereto, at any regular or special meeting of the board, and if the commissioners find that taxes or assessments have been so erroneously charged and collected, they shall order the auditor to draw his warrant on the county treasurer in favor of the person or persons paying the same, for the full amount of the taxes or assessments so erroneously charged and collected, and the county treasurer shall pay the same out of any surplus or unexpended funds in the county treasury; and the auditor shall, at the next semi-annual settlement with the auditor of state after the refunding of such taxes, deduct from the amount of taxes due the state at such settlement, the amount of such taxes that have been paid into the state treasury; but no taxes or assessments shall be so refunded, except such as have been so erroneously charged and collected in the five years next prior to the discovery thereof by the auditor; but no assessment shall be so returned, except from the fund or funds created in whole, or in part, by such erroneous assessment.”
*157 “Section 1039. (Books of “additions and. deductions” shall be kept):
“ The county auditor shall keep a book of ‘additions and deductions/ in which he shall enter all corrections of the duplicate, made after delivery of the same to the treasurer, which either increase or diminish the amount of any tax or assessment as stated in the duplicate, and besides the marginal corrections, provided for in the preceding section, he shall in each case give to the treasurer a certificate of the correction.”
“ Section 1040. (Omitted land taxes shall be charged on tax-list and duplicate; limitation):
“ When the auditor is satisfied that any lots or lands on the tax-list or duplicate have not been charged with either the county, township, hamlet, village, city, or school district tax, he shall charge against the same all such omitted tax, as far back as the last appraisal of real estate, unless in the meantime such lands or lots have changed ownership, in which ease, only the taxes chargeable since the last change of ownership shall be so charged.”
“ Section 2800. (Errors to be corrected, but no deductions to be made, except, etc.) :
“ Each county auditor shall, from time to time, correct any errors which he may discover in the name of the owner, in the valuation, description, or quantity of any tract or lot contained in the list of real property in his county; but in no case shall he make any deduction from the valuation of any tract or lot of real property, except such as shall have been ordered, either by the state board or by the county board oí equalization, or upon the written order of the auditor of state; which written order shall be only made upon a statement of' facts submitted to the auditor of state in writing.”
“ Section 2803. (When lands omitted from duplicate, auditor to restore same and assess the taxes thereon) :
“ In all cases where any county auditor shall discover, or have his attentien called to the fact, that any assessor in any previous year shall have omitted to return, or shall in any future year omit to return any lands, town lots, or any improvements, structures, or fixtures thereon, subject to taxation, sit *158 uated within his county, or if any such property has escaped taxation by reason of any error of said auditor, it shall be the duty of said auditor to ascertain the value thereof for taxation, as near as may be, and to enter said lands, town lots or improvements, upon the duplicate of the county, then in the hands of the county treasurer of such county, and to add to the taxes of the current year the simple taxes of each and every preceding year in which such property shall have escaped taxation, as far back as the next preceding decennial appraisement and equalization of real estate in his county, unless in the meantime such property shall have changed ownership, in which case only the taxes chargeable since the last change of ownership shall be added, or the owner of such property may, if he desires, pay the amount of such taxes into the county treasury on the order of said auditor.”
It is evident from the reading of these sections that there may well be a question as to what was the intent of the legislature as to the power conferred upon the auditor. In one or more of them it looks as if the auditor in some cases had the right to place upon the duplicate of the current year any taxes of any previous year that had been omitted, as in section 1036, and generally to correct all errors, as in section 2800; while in other sections, as in sections 1040 and 2803, the power of the auditor to make any of the additions authorized by those sections to the duplicate is clearly and expressly limited, and he may go as far back with his corrections only as the last appraisement of real estate, unless in the meantime such lauds or lots have changed ownership, in- which case only the taxes chargeable since the last change shall be so charged (sec. 1040), or as provided in section 2803, in substantially similar language, that “when any real estate” has escaped taxation by reason of any error of said auditor, it shall be the duty of said auditor to ascertain the value thereof for taxation, as near as may be, and to enter said lands, town lots or improvements, upon the duplicate of the county, then in the hands of the county treasurer of such county, and to add to the taxes of the current year the simple taxes of each and every preceding year in which such property shall have es *159 caped taxation, as far back as the next preceding decennial appraisement and equalization of real estate in his county, unless in the meantime such property shall have changed ownership, in which case only the taxes chargeable since the last change of ownership shall be added, or the owner of such property may, if he desires, pay the amount of such taxes into the county treasury, on the order of said auditor.”
What then is the true construction to be put upon these sections in this respect? We are of the opinion that the two sections last referred to, 1040 and 2803, were intended to place a limitation upon the power of the auditor to put upon the duplicate of the current year, taxes that for any reason should have been collected in a previous year; that is, in no case can he go behind a decennial appraisement, or a change in the ownership of such property on which the tax is sought to be placed. This seems to be the general and fixed policy of the law, and we think the rule thus established a wholesome one. If some of the other statutes referred to were to have a literal construction, it would seem that there would be nothing to prevent the auditor from placing upon the duplicate of the current year against a tract of real estate, taxes which were properly chargeable against it fifty years before, but which by mistake or otherwise, had not been then charged against it, or do the same thing where the property had since changed owners a number of times. There is much doubt whether these broader sections, 1036 and 2800, really were intended to' apply to a case like that before us; but whether this be so or not, all of the sections in pari materia must be read together; and as before stated, we think it was the manifest purpose of the legislature to affix a limitation upon the power of the auditor in cases like that before the court.
If this be so, what is the result here? We find from the agreed statement of facts that the decennial appraisement of 1890, for the city of Cincinnati, was fully completed on October 31, 1891. The duplicate of 1891 was based on thisde *160 cennial appraisement. The valuation of the real estate was that fixed by the various officers and boards pointed out and provided for by the statutes, and under the limitations mentioned in the sections referred to, the owners were entitled to have that valuation stand, and the auditor was not entitled to place against the property any taxes which by mistake or otherwise had not been charged against it in previous years. The fact that in a proceeding against the county auditor, to which the plaintiff was not a party and of which it had no notice, such auditor was ordered by the court to replace upon the duplicate a valuation of $153,260 which was claimed to have been illegally taken therefrom, without any specification or order as to the property against which any part of it should be placed, cannot in any way affect or prejudice the right of the plaintiff. Nor do we think that the decision of the Supreme Court in the case of Poe v. Raine, 47 Ohio St., has any bearing on the question under discussion. There the general power of the auditor to restore to the duplicate, valuations improperly deducted therefrom, was upheld, but the question whether that might be done after a change of ownership, or whether he could go behind a decennial appraisement, was not in any way referred to.
Nor in our judgment does that case decide another question raised in this case, viz., whether the addition having been made to property in 1889, by the board of equalization, and in the same year such addition was vacated by the same board sitting as a board of revision, as having been improperly added, brings the case within that provision of the statute which forbids such board to reduce the valuation of real estate so that the aggregate of the value thereof will be less than that of the duplicate of the preceding year. It is very questionable whether such provision does apply to a case of the kind before us, but it is not necessary for us to consider or decide that question in view of the decision at which we have arrived on the other question.
The same course of reasoning in regard to the question as *161 to the decennial appraisement would probably result in our holding that if it had. not intervened, the taxes for the year 1889, at least, could not have been added against this real estate and placed on the duplicate of 1891, for there was a substantial change in the ownership of the property, in March, 1890. But as the decision on the other point, if correct, settles the controversy in favor of the plaintiff, we have not fully considered this question, and we might on more mature deliberation and examination of it arrive at a different conclusion.
No. 1563. Herbert Jenney, for plaintiff, The Neave Building Co.
No. 1565. Province M. Pogue, for the Jones Bros. Electric Co.
No. 1572. Swing & Morse, for the Alms & Doepke Co.
No. 1625. Gerard, Lampe & Stallo, for Fannie J. Dickson.
No. 1668. G. W. Merrill, for Robt Burnett.
Gounty Solicitor and S. N. Maxwell, for defendant.
The decision in this case applies to all of the others heard at the same time, and the same decree will be entered in those cases, viz., that the treasurer be enjoined from the collection of the taxes on the additions made by the auditor to the duplicate of 1891 in the manner hereinbefore stated. There were other questions raised in those cases, which we do not consider it necessary to pass upon.
Swing and Cox, JJ., concur.